Filed 12/10/24  P. v. Roper CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>D'ANTE LUKE ROPER,<br><br>    Defendant and Appellant. | H051510<br>(Santa Clara County<br>Super. Ct. No. B2301184) |

Defendant D'Ante Luke Roper pleaded no contest to felony vandalism (Pen. Code,[1] § 594) after damaging the car of his former girlfriend, J.V.[2]  At sentencing, the trial court issued a 10-year criminal protective order protecting J.V. under section 136.2, subdivision (i)(1) (hereafter section 136.2(i)(1)).

On appeal, Roper contends the trial court abused its discretion in setting the duration of the protective order and asks this court to remand the matter for reconsideration of the order's duration.

For the reasons explained below, we affirm the judgment.

---

[1] All further unspecified statutory references are to the Penal Code.

[2] We refer to the victim by her initials to protect her privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(4).)

# I. FACTS AND PROCEDURAL BACKGROUND[3]

J.V. was Roper's intermittent girlfriend for about 12 years. They had children together. At the time of the present offense, Roper and J.V. were not in a dating relationship and did not live together. According to Roper, he and J.V. "were not on good terms due to his back and forth visits to jail."

On the morning of May 31, 2023[4] (which was J.V.'s birthday), Roper appeared outside a grocery store as J.V. exited her car. J.V. ignored Roper and did not speak with him.

After completing her grocery shopping, J.V. drove home. She saw Roper again as she parked her car on the street near her home. Roper approached J.V. and tried to give her a plate of food that he said was for their children. J.V. declined the food.

While standing near the car, J.V. and Roper argued about his infidelity. Roper threw the plate of food, walked over to a nearby landscaped area, and grabbed a six-inch-by-six-inch cement brick. Roper walked back to J.V.'s car and threw the brick at it, causing a large dent in one of the car's doors. He again picked up the brick and threw it at the car's rear window, shattering it. Roper fled the scene on his bicycle before police arrived.

The police determined that Roper was on active probation (as of January 12) for violations of sections 148 and 459 and Health and Safety Code section 11377, subdivision (a). On June 5, the police arrested Roper for vandalism of J.V.'s car and for violating his probation.

On June 7, the prosecution filed a complaint charging Roper with felony vandalism for maliciously damaging J.V.'s car in an amount of $400 or more (§ 594, subd. (a); count 1).

---

[3] Because Roper pleaded no contest prior to preliminary hearing, we take the facts from the police report that served as the factual basis for Roper's no contest plea.

[4] Unless otherwise indicated, all dates were in 2023.

On June 8, the trial court issued a no contact criminal protective order protecting J.V.

On June 15, pursuant to a written plea agreement, Roper pleaded no contest to felony vandalism (count 1).[5] The plea agreement called for, inter alia, three years of formal probation with domestic violence conditions (§ 1203.097) and a "peaceful contact" protective order. In addition, at Roper's request and without any objection from the district attorney, the trial court modified the existing no contact protective order to allow for telephone contact given that Roper and J.V. shared children.

According to a probation officer's sentencing memorandum, on July 11, J.V. requested a "a peaceful contact" protective order.

At a sentencing hearing held on August 10, the trial court suspended imposition of sentence on count 1 and placed Roper on probation for three years with terms and conditions.[6] The court also issued a 10-year peaceful contact protective order (expiring on August 10, 2033). (§ 136.2(i)(1).) The protective order states, in part, that Roper "must not harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements of" J.V. The order also allows J.V. to "record any prohibited communications made by" Roper and includes prohibitions on Roper's possession of a firearm or ammunition, any attempt to prevent or dissuade a victim or witness from attending a hearing, testifying, or making a report to law enforcement, and any action to

---

[5] On the same date, Roper admitted a violation of probation in a different case (No. B2201781), with the understanding that his probation would be reinstated and terminated at his sentencing on the felony vandalism charge.

[6] On the same date, the trial court reinstated and terminated Roper's probation in his other case. Additionally, in a third case arising from an unrelated incident involving a different victim, Roper pleaded no contest to misdemeanor battery (§ 242) and misdemeanor resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1)). For those offenses, the trial court denied probation and sentenced Roper to 20 days in county jail with credit for time served.

3

obtain the addresses or locations of J.V. or her "family members . . . unless good cause exists otherwise."

Roper's defense counsel objected to the duration of the protective order, claiming "[t]here is no basis for a ten-year protective order." Counsel also asked the trial court to "voir dire" J.V. (who was present in court) to see if "she wants a ten-year protective order." The court declined to question J.V. and ruled that a 10-year term "is warranted." The court explained, "It's my discretion based upon the facts of the case and the record. So I will enter a criminal court protective order for ten years under [s]ection 136.2 . . . . Again, it allows contact. It needs to be peaceful."

## II. DISCUSSION

Roper contends the trial court abused its discretion by issuing the 10-year peaceful contact protective order. He acknowledges that his vandalism offense qualifies as a crime involving domestic violence under section 136.2(i)(1). He, nevertheless, asserts that his offense "did not involve assaultive conduct, and nobody was injured." He further asserts that the trial court "did not base the order's duration on concerns for the safety of [J.V.] and her family or 'the probability of future violations' " (quoting § 136.2(i)(1)) because "the order allows peaceful contact." He claims that on the instant facts, "the trial court's imposition of a ten-year criminal protective order was 'inconsistent with the letter and spirit of the law.' " In addition, Roper maintains it is reasonably probable the trial court would have issued a protective order of shorter duration if it had "given proper attention to 'the seriousness of the facts.' " He urges this court to remand the matter so the trial court "may reconsider the criminal protective order's duration with proper attention to" that criterion.

The Attorney General responds that the 10-year duration of protective order is appropriate based on the statutory criteria: (1) the seriousness of the facts, (2) the probability of future violations, and (3) the victim's safety.

4

1. <u>Legal Principles</u>

Section 136.2(i)(1) authorizes the trial court to impose a 10-year protective order at sentencing if the crime of conviction involves domestic violence. (*People v. Lopez* (2022) 75 Cal.App.5th 227, 236–237.) The statute provides: "When a criminal defendant has been convicted of a crime involving domestic violence . . ., the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime. *The order may be valid for up to 10 years, as determined by the court*. . . . It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."[7] (§ 136.2(i)(1), italics added.)

We review a trial court's decision on the duration of a section 136.2(i)(1) protective order for an abuse of discretion. (See *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264; see also *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1087.) "This standard is deferential. [Citations.] But it is not empty. . . . [I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable

---

[7] The Legislature has twice amended section 136.2(i)(1) since Roper's August 2023 sentencing hearing. (Stats. 2023, ch. 14, § 1; Stats. 2024, ch. 538, § 1.) The first amendment, effective January 1, 2024, is not relevant to and does not affect our analysis of Roper's claim of error. (See Stats. 2023, ch. 14, § 1.) The second amendment, which will take effect on January 1, 2025, modifies the final sentence of section 136.2(i)(1) to add the following italicized language: "It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, the safety of a victim and the victim's immediate family, *and any information* [regarding the defendant's history] *provided to the court pursuant to [s]ection 273.75*." (Stats. 2024, ch. 538, § 1.) Regardless whether this additional language may apply to Roper's claim of error as of January 1, 2025, the record does not indicate that the prosecution provided the trial court any information regarding Roper's history pursuant to section 273.75. Hence, the recent amendment is not relevant to this case, and we do not consider the additional language in deciding this appeal.

law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162; see also *People v. Willover* (2016) 248 Cal.App.4th 302, 323.)

    2.  <u>Analysis</u>

We are not persuaded that the trial court abused its discretion by setting the duration of the protective order at 10 years. Roper's criminal conduct was serious. Just four months after a court had placed Roper on probation for burglary, resisting an officer, and drug possession convictions, Roper approached J.V. near her home (after she had ignored him outside the grocery store), argued with her, threw a plate of food, located a cement brick, and threw it at J.V.'s car twice, in her presence, causing significant damage. Roper's actions were violent and deliberate, and he showed little regard for the effect that his conduct might have on J.V., her car, or their children.

Furthermore, the record provides reasons for the trial court to harbor concerns about the probability of future violations of law and J.V.'s safety. As noted, Roper disregarded existing probation conditions when he committed the vandalism offense. In addition, in the third case for which he was sentenced on August 10, he exhibited a willingness to use force while committing separate misdemeanor offenses against another person. Roper's current offense and other behavior demonstrated his potential to act in a harassing, threatening, or other unlawful manner toward J.V. in the future. The trial court could reasonably endeavor to restrain such future conduct by Roper over the long term. (See *In re Martinez* (1978) 86 Cal.App.3d 577, 581 [past behavior may justify a condition aimed at deterring future criminality].) Moreover, that Roper threw a cement brick at J.V.'s car twice while she stood nearby engenders a significant concern that Roper might act again in a way that threatens J.V.'s safety and the safety of her immediate family.

The trial court's decision to allow peaceful contact between Roper and J.V. (in accord with the plea agreement and J.V.'s request) provides no basis to discount the seriousness of Roper's actions, the probability of future misconduct, or the concern for

J.V. and her family's safety. As a practical matter, Roper's and J.V.'s parental ties reasonably militate in favor of allowing peaceful contact between them. That practical concern, however, does not negate the trial court's discretion under the law to regulate the contact for the maximum period allowed. Section 136.2(i)(1) makes no durational distinction between a no contact protective order and a peaceful contact protective order. Further, we are not convinced by Roper's assertion that in allowing peaceful contact, the "protective order simply does nothing to protect" J.V. and is "redundant" of extant criminal laws. Although the instant protective order prohibits behaviors that are otherwise proscribed by law, the order also protects J.V. by allowing her to "record any prohibited communications" made by Roper, thereby shielding J.V. from a claim that such a recording would violate privacy laws. (See, e.g. §§ 632, 633.6.) Additionally, if Roper violates the protective order, he could be charged with contempt (§ 166, subd. (c)(1)(A)), which could serve as an added deterrent against committing future misconduct.

On this record, we discern no abuse of discretion by the trial court in setting the duration of the peaceful contact protective order at 10 years, as permitted by section 136.2(i)(1). We thus affirm the trial court's order.

### III. DISPOSITION

The judgment is affirmed.

7

_____
                        Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Grover, J.

**H051510**
*People v. Roper*